Stephen C. Woodruff
Attorney and Counselor at Law
2nd Flr., Hill Law Ofc. Bldg., Susupe
Tokcha Avenue at Lulai Way
P. O. Box 500770
Saipan, MP 96950
Tel.:   (670) 235-3872
Fax:   (670) 235-3873

Attorney for Plaintiff

**F I L E D**
Clerk
District Court

AUG _5 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

HONORIO G. CAMBRONERO,     )     Civil Action No. 08-**0033**

     **Plaintiff,**     )

     **-v-**     )     **COMPLAINT**

**RJCL CORPORATION *dba* RNV**     )
**CONSTRUCTION and RUEL R.**     )
**VILLACRUSIS,**     )

     **Defendants.**     )

## I
## NATURE OF THE ACTION

1.     This is an action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 (as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166) against Defendants RJCL Corporation *dba* RNV Construction and Ruel R. Villacrusis for their unlawful and discriminatory employment practices towards Plaintiff on the basis of disability in violation of Plaintiff's federally-protected rights, and for actions in tort and contract under applicable Commonwealth of the Northern Mariana Islands (CNMI) law.   Plaintiff, a qualified individual with a

disability, was denied medical care he was legally entitled to receive by law, and discharged from his position as an electrician, because of his disability.

2.    Plaintiff complains about employment discrimination based on disability and other impermissible grounds described in this Complaint, including, but not limited to: (a) discriminatory policies, practices, and/or procedures in firing, layoffs, and employment benefits; (b) violation of the CNMI Nonresident Workers Act and alien labor rules and regulations; (c) breach of contract; (d) breach of implied covenant of good faith and fair dealing, and (e) intentional infliction of emotional distress.

3.    Plaintiff is seeking, *inter alia*, declaratory and injunctive relief, punitive, expectation, incidental, and consequential damages, costs, and attorney's fees to redress Defendants' unlawful and discriminatory employment policies, practices, and/or procedures and related Commonwealth-law claims.

## II
## JURISDICTION AND VENUE

4.    The Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12117, as amended, applies to this matter through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, § 502(a)(2).

5.    This Court has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331(a) (federal question jurisdiction), and 28 U.S.C. § 1337(a) (proceedings arising under any Act of Congress regulating commerce).

6.    This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a) which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

7.     This Court has jurisdiction over Plaintiff's non-Title VII claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

8.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed in Saipan, Commonwealth of the Northern Mariana Islands.

### III
### PROCEDURAL REQUIREMENTS

9.     On or about October 16, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in Saipan, Commonwealth of the Northern Mariana Islands.  The charge was filed within one hundred eighty (180) days after the occurrence of one or more of the unlawful employment practices alleged herein pursuant to 42 U.S.C. § 2000e-5(e)(1).

10.     On or about March 20, 2008, the EEOC issued the Plaintiff a Notice of Right to Sue.  Plaintiff is filing this complaint within ninety (90) days after the date on which he received the Notice of Right to Sue in compliance with 42 U.S.C. § 2000e-5(f)(1).  Attached as Exhibit "1" and incorporated by reference is a true copy of the Notice of Right to Sue.

11.     Although Plaintiff received notice of discharge on March 22, 2007, Plaintiff remained legally entitled to medical care up to his April 24, 2007 termination and for 96 days thereafter under Commonwealth law.  Defendants' continuing discriminatory refusal to provide such care constitutes a continuing violation up to at least July 29, 2007, seventy-nine days prior to the date Plaintiff filed his charge of discrimination.  Further, for many months, Defendants engaged in a practice of concealment of true intentions and deception designed to lull Plaintiff in to a false sense that his medical requirements ultimately would be addressed.

12.     All jurisdictional prerequisites to the institution of this lawsuit have been fulfilled, and Plaintiff has exhausted his administrative remedies as required by law.

## IV
## PARTIES

13.     Plaintiff **HONORIO G. CAMBRONERO** is a citizen of the Republic of the Philippines who resides in Saipan, Commonwealth of the Northern Mariana Islands (CNMI).  Plaintiff, at all relevant times, was an employee of Defendants, within the meaning of the ADA, 42 U.S.C. § 12111(4).

14.     Plaintiff is, and at all relevant times, was suffering from chronic stable angina pectoris, ischemic heart disease, hypertension stage II, and impaired fasting glucose that substantially limit one or more of Plaintiff's major life activities and which are form of "disabilities" as defined in 42 U.S.C. § 12102(2).

15.     Plaintiff is, and at all relevant times, was a "qualified individual with a disability" as defined in 42 U.S.C. § 12111(8) and who, with or without reasonable accommodation, can perform the essential functions of his employment position as an electrician with Defendants.

16.     Defendant **RJCL CORPORATION** *dba* **RNV CONSTRUCTION** (RNV), on information and belief, is, and all relevant times, was a corporation organized and existing under the laws of the CNMI having its principal place of business on Saipan, CNMI.

17.     Defendant RNV is, and at all relevant times, was engaged in an industry affecting commerce, and employed more than 15 employees, and was an employer of Plaintiff within the meaning of  42 U.S.C. § 12111(5)(A).

18.     Defendant RNV is, and at all relevant times, was a covered entity within the meaning of 42 U.S.C. § 12111(2).

-4-

19.    Defendant **RUEL R. VILLACRUSIS** (VILLACRUSIS) is, and at all relevant times, was the general manager of Defendant RNV.

20.    Defendant VILLACRUSIS is, and at all relevant times, was the general manager and agent of Defendant RNV who was acting within the course and scope of that relationship in the decision making and responsibility for, and establishment of practices or policies for Defendant RNV that resulted in the unlawful and discriminatory employment practices alleged herein, and is therefore an employer of Plaintiff within the meaning of 42 U.S.C. § 12111(5)(A).

## V
## STATEMENT OF FACTS

21.    Plaintiff was employed by Defendants as an electrician beginning sometime in April, 2000, and remained so employed pursuant to written employment contracts approved by the CNMI Department of Labor (DOL) until his discharge on April 24, 2007.

22.    Sometime in August 2006, Plaintiff begun to feel chest pains and numbness on his left arm which prompted him to go to the Pacific Medical Center (PMC) and where he was attended by Dr. Gabriel de Guzman.

23.    Plaintiff underwent initial medical treatment and received medications at the PMC, but was eventually issued a medical referral letter by Dr. de Guzman referring him for medical treatment in the Philippines.  Dr. de Guzman stated in his referral letter that Plaintiff needs to seek further "work-up [in the Philippines] since this medical service is not available on Saipan."

24.    Plaintiff immediately informed Defendant VILLACRUSIS about his medical condition and Dr. de Guzman's advice for Plaintiff to go to the Philippines to undergo urgent medical treatment.

25.    Defendant VILLACRUSIS agreed to allow Plaintiff to go to the Philippines for medical treatment and assured Plaintiff that the company will shoulder all of Plaintiff's medical expenses.

26.    Defendant VILLACRUSIS gave Plaintiff $500.00 as initial medical allowance and gave Plaintiff the round trip airline ticket which Plaintiff had previously won in a Christmas raffle contest conducted by Defendant RNV for its employees.

27.    Plaintiff left for the Philippines on October 4, 2006.

28.    On or about October 6, 2006, Plaintiff went to the Philippine Heart Center and was seen by Dr. Erwin D. Dizon, a cardiologist.

29.    Plaintiff was diagnosed by Dr. Dizon to be suffering from "acute coronary syndrome" and "new onset angina." Dr. Dizon suggested coronary angiography and possible trans-coronary catheter therapy. According to Dr. Dizon, the entire medical procedures will cost approximately Php 500,000.00 which is roughly equivalent to $ 11,000.00.

30.    Plaintiff informed Dr. Dizon that he needed first to obtain the permission of his employer on Saipan, particularly concerning the medical costs.

31.    Plaintiff thereafter contacted by telephone Defendant VILLACRUSIS in Saipan and informed him about Dr. Dizon's medical diagnosis, the suggested medical procedures and the medical costs.

32.    Defendant VILLACRUSIS instructed Plaintiff to check other hospitals for a cheaper medical treatment.

33.    Following Mr. Villacrusis' instruction. Plaintiff went to the Philippine General Hospital (PGH) where he was seen by several physicians including Dr. Reina de Guzman, an internal medicine specialist and Dr. Jessore Isodoro, a cardiologist.

34.    Plaintiff was diagnosed by Dr. De Guzman and Dr. Isodoro to be suffering from chronic stable angina pectoris, ischemic heart disease, hypertension stage II and impaired fasting glucose and recommended angioplasty or bypass surgery which according to them will cost Php 450,000.00 or roughly equivalent to $ 10,000.00.

35.    Plaintiff again contacted by telephone Defendant Villacrusis in Saipan and informed him about Dr. De Guzman and Dr. Isodoro's medical findings, the suggested medical procedures and the medical costs.

36.    Defendant VILLACRUSIS instructed Plaintiff to wait for his go-signal and promised and assured Plaintiff that he will later call Plaintiff in the Philippines to give him the go-ahead signal.  Mr. Villacrusis also promised Plaintiff that he will see and visit him in the Philippines sometime in December 2006.

37.    Plaintiff waited for Defendant VILLACRUSIS' call, but the latter never contacted Plaintiff nor saw Plaintiff in December as he promised.

38.    Plaintiff then went to the Philippines Department of Foreign Affairs (DFA) where he sought assistance to obtain from Defendants the financial assistance for his medical treatment in the Philippines.

39.    On information and belief, DFA contacted the Philippine Consulate Office in Saipan which in turn contacted Mr. Villacrusis about Plaintiff's concerns.

40.    On information and belief, Defendant VILLACRUSIS informed the Philippines consular officials that he would be willing to pay for the medical expenses of Plaintiff.

41.    As he had been advised by the concerned DFA officials, Plaintiff waited for Mr. Villacrusis' telephone call again, but Defendant Villacrucis still did not contact Plaintiff.

-7-

42. Unable to obtain his employer's consent, Plaintiff never had any of the medical procedures suggested by his Philippine doctors. On February 3, 2007, Plaintiff travelled back to Saipan still ailing and unhealthy.

43. On or about March 22, 2007, Defendant VILLACRUSIS gave Plaintiff a notice informing Plaintiff that his employment contract will not be renewed upon its expiration on April 24, 2007.

44. When Plaintiff asked Defendant VILLACRUSIS why he was not being renewed, Mr. Villacrusis specifically told Plaintiff that it was because of his heart condition.

45. Sometime in March 2007, Plaintiff approached counsel and sought legal assistance.

46. Plaintiff's counsel wrote two letters to Defendant VILLACRUSIS requesting the latter to make provisions for Plaintiff's medical treatment as recommended by his doctors.

47. Following communications from Plaintiff's counsel, Defendant VILLACRUSIS beginning in late April 2007 finally agreed to commence and did in fact start settlement negotiations with Plaintiff's counsel.

48. Sometime in June 2007, Plaintiff learned that Defendant VILLACRUSIS was telling Defendants' employees that the company's dispute with Plaintiff is closed and concluded.

49. On or about June 20, 2007, Plaintiff's counsel wrote another letter to Mr. Villacrusis where counsel expressed his hope that Mr. Villacrusis' representation to his employees that the dispute with Plaintiff had been settled is true and that Defendants would be willing to meet his obligations to Plaintiff.

50.    In his June 20, 2007 letter, Plaintiff's counsel also asked Mr. Villacrusis to release Plaintiff's final paycheck but asked him not to force Plaintiff into first signing a clearance where Plaintiff would purportedly be releasing the Defendants from all claims as a condition for releasing Plaintiff's last paycheck because there had been no formal settlement agreed to and executed yet by the parties at that point.

51.    As a gesture of good faith and so as not to ruin Mr. Villacrusis' credibility before his employees, counsel even sent the June 20, 2007 letter and its enclosures in a sealed manila envelope marked "personal and confidential."

52.    On or about October 22, 2007, Plaintiff's counsel followed-up with another letter to Mr. Villacrusis reiterating Plaintiff's desire to conclude the settlement negotiations.

53.    From the onset of their settlement negotiations with Defendant VILLACRUSIS beginning on or about April 20, 2007, Plaintiff, through his counsel, had negotiated in good faith with Mr. Villacrusis to settle amicably Plaintiff's dispute with Defendants.

54.    Plaintiff and his counsel were induced into believing that Defendant VILLACRUSIS was sincere in negotiating a settlement, and had in fact good reasons for believing that the settlement negotiation is heading to a positive conclusion based on Mr. Villacrusis actions, words, and representations.

55.    In November of 2007, Defendant VILLACRUSIS agreed to meet with Plaintiff's counsel, presumably to finalize a settlement agreement. On the appointed day, Mr. Villacrusis requested to reschedule for the following week or a couple of days later. On or about November 7, 2007, the day set for the rescheduled appointment, the secretary of Plaintiff's counsel called Defendant Villacrusis's office to remind him not to miss the appointment. She was then told that there was "no need" for

Defendant Villacrusis to meet with Plaintiff's counsel because "we already got a lawyer."

56. Despite this stunning display of bad faith by Defendant VILLACRUSIS, Plaintiff's counsel wrote to Defendants' counsel on January 10, 2008, and February 7, 2008, reiterating Plaintiff's willingness to resolve the matter amicably and urging settlement based on the settlement terms previously offered by Plaintiff, which required little more than compliance by Defendant with his obligations under Commonwealth law.

57. On or about February 8, 2008, Plaintiff's counsel received a letter from Defendants' counsel rejecting entirely the settlement terms offered by Plaintiff stating categorically that "RNV Construction will not agree to pay any further medical expenses for Mr. Honorio Cambronero."

58. At all relevant times, Plaintiff and his counsel offered and negotiated in good faith the settlement terms which were never rejected by Mr. Villacrusis during their initial settlement talks until their counsel's February 8, 2008 letter.

59. During his employment with Defendants, there were other workers who got sick and whose medical expenses were shouldered by Defendants.

60. Plaintiff is informed and believes, and thereon alleges, that other workers who became sick and incurred medical expenses in the process were not terminated by the company on the basis of incurring medical expenses alone which the company was required to pay pursuant to the employment contract and the applicable CNMI laws.

61. Plaintiff further believes that he was terminated in violation of public policy due to his medical expenses which the employment contract and CNMI law require be borne by the employer.

# VI
## CAUSES OF ACTION

### First Cause of Action
Violation of ADA

62.    Paragraphs 1 through 61 above are incorporated herein by reference as if fully pleaded in this First Cause of Action.

63.    Defendants' failure and refusal to make provision for and pay Plaintiff's medical care according to the applicable standard terms and conditions of employment, and discharging Plaintiff to avoid payment of Plaintiff's medical care, because of his disability constitutes an unlawful employment practice in violation of 42 U.S.C. § 12112.

64.    Defendants' unlawful and discriminatory practices because of disability as alleged above deprived Plaintiff of equal employment opportunities or otherwise adversely affected his status as an employee.

65.    As a direct and proximate result of Defendants' decision to fail and refuse to pay medical costs and to terminate Plaintiff's employment, Plaintiff has suffered and will continue to suffer inadequate medical care; substantial and serious risk to health, life, and limb; pain; suffering; anxiety; loss of enjoyment of life; and a substantial loss of earnings to which he otherwise would have earned.

66.    Defendant engaged in the above-described conduct against Plaintiff with malice and in reckless disregard of Plaintiff's federally-protected rights thereby entitling Plaintiff to punitive damages in an amount to be determined at trial.

### Second Cause of Action
Differential Treatment on Medical Benefits

67.    Paragraphs 1 through 61 above are incorporated herein by reference as if fully pleaded in this Second Cause of Action.

68.    Defendants' refusal to renew Plaintiff on the basis alone of his disability and the attendant disability-related medical expenses that Defendant is required by law and contract to pay, for the purpose of avoiding Defendants' legal obligations, while routinely renewing and providing medical coverage to other workers who are not disabled according to law or otherwise falling within the definition of a qualified individual with a disability, constitutes an unlawful employment practice in violation of 42 U.S.C. § 12112.

69.    Defendants' unlawful and discriminatory practices as alleged above deprived Plaintiff of equal employment opportunities or otherwise adversely affected his status as an employee because of Plaintiff's disability.

70.    Defendant engaged in the above-described conduct against Plaintiff with malice and in reckless disregard of Plaintiff's federally-protected rights thereby entitling Plaintiff to punitive damages in an amount to be determined at trial.

**Third Cause of Action**
Termination Based on Disability and Refusal to Provide Medical
Coverage Contrary to Public Policy

71.    Paragraphs 1 through 61 above are incorporated herein by reference as if fully pleaded in this Third Cause of Action.

72.    At all times during Plaintiff's employment with Defendant, the applicable laws of the Commonwealth of the Northern Mariana Islands required that employers be "responsible and liable for the insurance or payment of all medical expenses" of foreign national workers such as Plaintiff.  3 CMC § 4437(c).

73.    Furthermore, based on a CNMI Supreme Court decision on the issue, an employer is responsible for medical coverage of a nonresident worker for up to ninety-six (96) days after the expiration date of the employment contract. American Construction, Inc., et. al. v. Epifanio Salgado, et. al., 1997 MP 26.

-12-

74.   By terminating Plaintiff's employment on account of his disabilities and failing and refusing to provide for Plaintiff's disability-related medical expenses, Defendants breached Plaintiff's reasonable expectation of continued employment and violated Commonwealth public policy that employers of foreign national workers be responsible for those workers' medical expenses without charge back to the employee or other adverse effect on the employment relationship.

75.   As a direct and proximate result of Defendants' decision to terminate Plaintiff's employment because of his disability and refusal to make provisions for Plaintiff's medical expenses both in violation of public policy, Plaintiff has suffered and will continue to suffer inadequate medical care; substantial and serious risk to health, life, and limb; pain; suffering; anxiety; loss of enjoyment of life; and a substantial loss of earnings and employment benefits, including, but not limited to the amount of medical expenses required for Plaintiff's medical treatment.

### Fourth Cause of Action
Breach of Contract

76.   Paragraphs 1 through 61 above are incorporated herein by reference as if fully pleaded in this Fourth Cause of Action.

77.   At all relevant times, Defendants represented to Plaintiff, in various writings, including but not limited to the, employment contract, that their employment relationship with Plaintiff would be based upon good faith, that Plaintiff would be treated fairly and equitably, that Plaintiff would be judged on the basis of individual merit and ability, that Plaintiff would not be discriminated against, and that Plaintiff would receive all the employment benefits under the employment contract. These provisions and representations form part of Plaintiff's express employment contract with Defendants.

78.   Prior to Plaintiff's discharge, Plaintiff had performed all conditions, covenants, promises, duties, and responsibilities required of him to be performed in accordance and in conformity with his employment contract with Defendants.

79.   Defendants breached the employment contract by refusing to provide for Plaintiff's medical treatment.  The relevant part of the employment contract reads as follows:

> H.  The Employer shall be responsible and liable for the medical insurance or payment of all medical expenses of the Employee, including the cost of referral and evacuation of medical treatment outside the CNMI and, in the event of Employee's death, the cost of embalming and transportation of the Employee's corpse back to his/her point of origin.

80.   Further, on the date of Plaintiff's discharge, Defendants breached Plaintiff's employment contract and wrongfully failed to judge Plaintiff on the basis of merit and ability, when they wrongfully terminated Plaintiff's employment because of his disability.

81.   Based on Defendants' breach of contract as mentioned above, Plaintiff is entitled to expectation, incidental, and consequential damages, and further to the amount of medical expenses required for his complete medical treatment in such amount as determined at trial.

### Fifth Cause of Action
Breach of Implied Covenant of Good Faith and Fair Dealing

82.   Paragraphs 1 through 61 above are incorporated herein by reference as if fully pleaded in this Fifth Cause of Action.

83.   The employment contract has implied in law a covenant of good faith and fair dealing by which Defendants promised to give full cooperation to Plaintiff in his performance under the employment contract and to refrain from any act that

1  would prevent or impede Plaintiff from performing all of the conditions of the
2  agreement.

3      84.   Defendants breached their implied covenant of good faith and fair
4  dealing with Plaintiff by: (a) by failing to provide for Plaintiff's medical treatment in
5  the Philippines; and (b) by wrongfully terminating Plaintiff because of his disability
6  and disability-related medical expenses.

7      85.   As a proximate cause of Defendants' breach of the covenant of good
8  faith and fair dealing, Plaintiff has suffered and continues to suffer substantial losses
9  in earnings and other employee benefits that he would have received had Defendants
10 not breached the agreement, in an amount to be determined at trial.

11     86.   As a further proximate result of the above-mentioned acts, Plaintiff has
12 suffered humiliation, mental pain and anguish, physical pain, loss of enjoyment of life,
13 inadequate medical care, and substantial and serious risk to health, life, and limb, all to
14 Plaintiff's damage in an amount to be proven at trial.

15     87.   The above-mentioned acts of Defendants were willful, wanton,
16 malicious, and oppressive, and justify an award of punitive and exemplary damages in
17 an amount to be determined at trial.

18
19                          **Sixth Cause of Action**
                          Specific Performance

20     88.   Pargraphs 1 through 61 and paragraphs 76 though 81 above are
21 incorporated herein by reference as if fully pleaded in this Sixth Cause of Action.

22     89.   By the express terms of Plaintiff's employment contract, the
23 "[Defendants] shall be responsible and liable for the medical insurance or payment of
24 all medical expenses of the [Plaintiff]."

25

1   90.   The consideration set forth in Plaintiff's employment contract with
2   Defendants was fair and reasonable, and in the entering into of the employment
3   contract Defendant was possessed of superior bargaining power.

4   91.   Plaintiff has performed all conditions, covenants, and promises required
5   on his part to be performed in accordance with the terms and conditions of the
6   employment contract.

7   92.   Defendants have failed and refused, and continue to fail and refuse, to
8   perform the conditions of the contract on their part to be performed in that
9   Defendants refused to make provision for the payment of Plaintiff's medical expenses
10  as required by Plaintiff's employment contract and thereby interfered with and
11  prevented Plaintiff from obtaining the necessary and appropriate medical
12  recommended by his doctors at a time and times that Plaintiff had an absolute legal
13  right to receive such care at Defendants exclusive expense.

14  93.   Plaintiff is therefore entitled to an order directing Defendants to
15  specifically perform their obligations under the contract and make provision for the
16  medically-indicated treatment of Plaintiff in the Philippines.

17  94.   Furthermore, pursuant to 3 CMC § 4447(d), Plaintiff is entitled to
18  recover separate attorney fees incurred in the enforcement of the provisions of the
19  employment contract.

20  95.   By reason of the aforementioned breach of the Defendants, Plaintiff was
21  forced to secure the services of the law offices of Stephen C. Woodruff to pursue his
22  claim and to prosecute this lawsuit.

23  96.   Plaintiff is therefore entitled to an award of attorney's fees in amount to
24  be determined at trial.

25

1
2

### Seventh Cause of Action
Intentional Infliction of Emotional Distress

3
4

97.    Paragraphs 1 through 61 above are incorporated herein by reference as if fully pleaded in this Seventh Cause of Action.

5
6
7

98.    Defendants, in committing the above-described acts, intended to and did inflict severe emotional distress upon Plaintiff.  Defendants acted with a reckless disregard of the probability of causing emotional distress to Plaintiff.

8
9
10
11

99.    As a direct result of the outrageous acts and omissions, conduct, and discrimination, Plaintiff became physically distraught and sustained shock to his nervous system and suffered severe emotional distress, all resulting in damages to him in an amount to be proven at trial.

12
13
14
15

100.    Defendants engaged in the above-described conduct against Plaintiff with malice and in reckless disregard of Defendants' legal and moral obligations, of Plaintiff's federally-protected rights, and of Plaintiff's CNMI-protected rights, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial.

16
17

### PRAYER FOR RELIEF

18

WHEREFORE, Plaintiff respectfully requests the following relief:

19
20
21

(1)    A grant of permanent injunction enjoining Defendants from engaging in any employment practices which discriminate on the basis of disability under the First Cause of Action.

22
23
24
25

(2)    Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities to qualified individuals with disabilities, and which eradicate the past and present unlawful employment practices under the First Cause of Action.

-17-

(3)     An award of punitive damages, costs of medical care, and lost earnings according to law and proof under the First Cause of Action;

(4)     An award of punitive damages according to law and proof under the Second Cause of Action;

(5)     An award of lost of earnings and employment benefits, including the amount of medical expenses required by Plaintiff's medical treatment according to law and proof under the Third Cause of Action;

(6)     An award of compensatory and punitive damages under the Third Cause of Action;

(7)     An award of expectation, incidental, and consequential damages, and amount of medical expenses required for Plaintiff's medical treatment according to law and proof under the Fourth Cause of Action;

(8)     An award of loss earnings, lost employment benefits (including costs of medical care), compensatory, punitive and exemplary damages according to law and proof under the Fifth Cause of Action;

(9)     An order directing Defendants to specifically perform their obligation to pay for Plaintiff's medical care by making provision for the payment of the amount of Plaintiff's medical expenses (and actually paying such expenses) and taking all other steps reasonably necessary to facilitate receipt by Plaintiff of the medical services recommended by his doctors,

1    and a separate award of attorney's fees for bringing this

2    enforcement action under the Sixth Cause of Action;

3    (10)    An award of compensatory and punitive damages under the

4    Seventh Cause of Action;

5    (11)    An award of reasonable attorney's fees and costs; and

6    (12)    Such other and further relief as this Court deems just and

7    proper.

8

9    DATED this 1st day of August, 2008.

10

11

12    STEPHEN C. WOODRUFF
        Attorney for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

EEOC Form 161 (2/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Honorio Cambronero**<br>**P.O. Box 502452**<br>**Saipan, MP 96950** | From: | **Honolulu Local Office**<br>**300 Ala Moana Blvd**<br>**Room 7-127**<br>**Honolulu, HI 96850** |

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **486-2008-00020** | **James Yao,**<br>**Investigator** | **(808) 541-3720** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[X]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

_Timothy A. Riera_                    **3 - 20 -08**

**Timothy A. Riera,**
**Director**                          (Date Mailed)

cc:  **Michael Dotts, Esq.**
**O'Connor Berman Dotts & Banes**
**P.O. Box 501969**
**Saipan, MP 96950**

"EXHIBIT 1"